IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HUNTER'S PRECISION CONSTRUCTION
& ROOFING, INC. AND CENTRAL UNITED
METHODIST CHURCH OF ALBUQUERQUE,
INSURED AS AND A/K/A CENTRAL
ALBUQUERQUE UNITED METHODIST CHURCH,

    Plaintiffs,

v.                                                 Case No. 22-cv-00483 KG/SCY

UNITED METHODIST INSURANCE
COMPANY, INC., CUSTARD INSURANCE
ADJUSTERS, INC., SHELLY HUGHES-HUMBLES,
JEFFREY KOCH, and GALLAGHER BASSET
SERVICES, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Remand (Doc. 12). That Motion is fully and timely briefed. (Docs. 19, 20). Having considered the briefing and the applicable law, the Court grants the Motion.

I.    *Background*

Plaintiffs bring seven claims related to Defendants' alleged refusal to pay the full amount of loss for a hail-damaged roof. *Generally* (Doc. 1) Ex. A. Plaintiffs filed their action in the Second Judicial District Court, County of Bernalillo, State of New Mexico, on May 10, 2022. *Id*. Defendants removed the case to this Court on June 30, 2022, claiming diversity jurisdiction and alleging fraudulent joinder of the one non-diverse defendant, Shelly Hughes-Humbles. (Doc. 1). Specifically, Defendants argue that no colorable claims are or can be brought against

Ms. Hughes-Humbles individually and that, therefore, she was joined solely to defeat diversity jurisdiction. *Id.* at 3–10.

Ms. Hughes-Humbles is an Albuquerque-based "multi-line adjuster" who was assigned by her employer, Custard Insurance Adjusters, to investigate the Plaintiffs' insurance claim and who produced two different repair estimates for the roof damage. (Doc. 1) Ex. A at ¶¶ 44–45, 49, 76. Custard Insurance Adjusters was retained by the original insurer, United Methodist Insurance Company ("UMIC"), to assist with the investigation and adjustment of the claim. *Id.* at ¶¶ 43–45. Both Custard and UMIC are co-defendants in this action.

Plaintiffs, in turn, filed their Motion to Remand arguing that Ms. Hughes-Humbles is, indeed, a properly named defendant, that diversity does not exist, and, therefore, that this Court lacks jurisdiction. *Generally* (Doc. 12). Plaintiffs further request attorneys' fees because, they claim, Defendants had no objectively reasonable basis to seek removal and claim fraudulent joinder. *Id.*

The sole question presented is whether Ms. Hughes-Humbles was properly or fraudulently joined. If properly joined, the Court lacks jurisdiction and must remand the case. If fraudulently joined, the case was properly removed to this Court.

II.    *Analysis*

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.,* 420 F.3d 1090, 1094–1095 (10th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941); *United States ex rel. King v. Hillcrest Health Ctr.,* 264 F.3d 1271, 1280 (10th Cir. 2001)). All doubts are to be resolved in favor of remand. *Fajen v. Found. Reserve Ins. Co.,* 683 F.2d 331, 333 (10th Cir.

1982). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002).

In this case, Defendants assert diversity jurisdiction based on fraudulent joinder. To establish fraudulent joinder, a defendant must show the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (citation omitted). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (citation omitted). That "heavy burden" also means that a removing party must demonstrate there is "<u>no possibility</u> that plaintiff would be able to establish a cause of action against the joined party." *Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000) (unpublished table decision) (cleaned up) (citations omitted) (emphasis added). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Id.* at *2. Finally, the Court must remand the case if "any one of the claims" against the non-diverse defendant is "possibly viable." *Id.* So, the Court can find fraudulent joinder only if there is "no possibility" of a claim against Ms. Hughes-Humbles but must find her properly joined if there is any "possibly viable" claim against her.

In the Complaint, Plaintiffs bring seven claims, four of which potentially implicate Ms. Hughes-Humbles: (1) Claim 3, which alleges violations of the New Mexico Unfair Insurance Practices Act, NMSA §§ 59A-16-1 *et seq.*; (2) Claim 4, which alleges violations of the New Mexico Unfair Trade Practices Act, NMSA §§ 57-12-1 *et seq.*; (3) Claim 5, which alleges breach

of the covenant of good faith and fair dealing as well as insurance bad faith; and (4) Claim 6, which alleges civil conspiracy. (Doc. 1) Ex. A at ¶¶ 22–29.

Plaintiffs allege the following facts about Ms. Hughes-Humbles, all of which will be assumed true for purposes of this Motion:

- Ms. Hughes-Humbles' first repair estimate noted damage to approximately 25 percent of roofing tiles, recommended individual spot repairs of those damaged tiles (as opposed to total roof replacement), and estimated $72,980.99 in actual cash value for the repairs. (Doc. 1) Ex. A at ¶¶ 49–54;

- After completion of the first repair estimate, Ms. Hughes-Humbles learned two new pieces of information from Plaintiffs: first, the manufacturer of the roof tiles recommended replacement of tiles over spot repair and refused to warranty a partially repaired roof; and, second, a public insurance adjuster estimated repairs to cost $2,241,409.94, (Doc. 1) Ex. A at ¶¶ 63–76;

- Ms. Hughes-Humbles then conducted a second investigation and her second repair estimate persisted in recommending individual spot repairs, but adjusted certain cost assumptions upward, and estimated $103,055.53 in actual cash value for repairs, *id.* at ¶¶ 76–81;[1]

- Ms. Hughes-Humbles' second repair estimate relied on a pricelist for material and labor costs which was 17 months old, *id.* at ¶ 79; and

- Ms. Hughes-Humbles, "on behalf of the other Defendants," conditioned the increased repair payments on Plaintiffs signing a Release discharging Defendants of further claims, actions, demands, etc., *id.* at ¶¶ 83–84.

---

[1] In their Motion, Plaintiffs newly allege that Ms. Hughes-Humbles "misrepresent[ed]" the scope and cost of repairs, but they did not explicitly plead that allegation initially. (Doc. 12) at 3.

Rolling those specific facts up with the rest of the Complaint, Plaintiffs claim that the estimates were insufficient to cover the damage because spot repairing was an inappropriate remedy and full tile replacement was required. *Id.* at ¶¶ 58, 59, 75. Plaintiffs also argue that using a 17-month-old price list resulted in "withholding covered benefits." *Id.* at ¶ 80. Additionally, Plaintiffs assert that conditioning payment of repairs on a release violates New Mexico law. *Id.* at ¶¶ 85–86. And, finally, Plaintiffs claim that all the Defendants—Ms. Hughes-Humbles included—acted in concert and with a common purpose to violate the law, which constitutes a civil conspiracy and makes all members jointly and severally liable. *Id.* at ¶¶ 203–207.

Defendants argue, in their notice of removal and in response to the instant Motion, that none of those allegations creates any claims against Ms. Hughes-Humbles individually. In the interest of efficiency, the Court does not address all four potential claims. Instead, because the Court need only find a single possibly viable claim, it addresses only the New Mexico Unfair Insurance Practices Act, under which it concludes Plaintiffs have a possible claim against Ms. Hughes-Humbles. Given that, the Court determines Ms. Hughes-Humbles was not fraudulently joined, the parties are not fully diverse and this Court lacks jurisdiction.

The purpose of the New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to 30 (the Act), is "to regulate trade practices in the insurance business and related businesses," § 59A-16-2, and to prevent "unfair or deceptive" or "fraudulent" acts, § 59A-16-3. The Act creates a private right of action for damages for any violation thereof. § 59A-16-30. Important to this case, the Act regulates not just insurance companies but also "agents, brokers, solicitors, [and] <u>adjusters</u>," among others. § 59A-16-1 (emphasis added). The Act also

enumerates specific prohibited acts, several which are potentially implicated by the facts pled about Ms. Hughes-Humbles, including:

> A. misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;
> …
> E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;
> …
> G. compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

§ 59A-16-20.

Defendants make three primary arguments for why a claim against Ms. Hughes-Humbles is impossible, none of which carries their burden. First, Defendants argue that "[w]hile insurance adjusters are governed by the Act, Plaintiffs cite to no authority for the proposition that an insurance adjuster – one that does not maintain an insurance policy with any of the parties making the claim – can be liable under the Act." (Doc. 19) at 8 (citing *Martinez v. Cornejo*, 2009-NMCA-011, ¶ 22). The Court is not persuaded. Indeed, if there were any ambiguity in the text of the Act, New Mexico courts have clearly held that the listed prohibited acts apply to adjusters. *Dellaira v. Farmers Ins. Exch.*, 2004-NMCA-132, ¶ 18 ("Pursuant to Section 59A–16–1, Section 59A–16–20 applies to adjusters as well as insurers."). And in the case cited by Defendants, the New Mexico Court of Appeals held that the Act's private cause of action may apply to individual employees alongside their insurance company employers. *Martinez*, 2009-NMCA-011, ¶ 22. Given these straightforward statements of law, the Defendants' first argument fails.

Second, Defendants argue that "no allegation suggests that Defendant Custard or Ms. Hughes-Humbles sold an insurance policy to any of the parties relevant to this case." (Doc. 19) at 8. Defendants cite to no authority, however, justifying why such showing is a necessary element of the claim. Given the holding in *Dellaira* that the insurer's liability to the insured attaches to third parties with control over "the merits of an insured's claim" (in the context of a breach of good faith and fair dealing), it seems explicitly unnecessary that a party be the direct insurer to be liable to the insured. 2004-NMCA-132, ¶ 14. Thus, Defendant's second argument fails.

Third, Defendants argue that Plaintiffs fail to "allege facts relevant to Ms. Hughes-Humbles sufficient to warrant a conclusion that she in fact violated the Act." (Doc. 19) at 9. The sufficiency of the factual allegations of a complaint, however, is the standard on a motion to dismiss, while the standard applied to fraudulent joinder is impossibility.

The Court emphasizes that the impossibility standard is "more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)." *Montano*, 2000 WL 525592, at *2. Here, Plaintiffs indeed allege facts, described above, which possibly implicate the Act's prohibitions—that Ms. Hughes-Humbles misrepresented or ignored known facts to make bad faith cost estimates, for example. The mere possibility of a claim is all that is necessary here. Whether the facts pled are sufficient to survive a Rule 12(b)(6) motion must be determined by the original state court. *Id.*

Concluding that Defendants cannot show there is "no possible" claim against Ms. Hughes-Humbles, this Court grants the Motion to Remand. Pursuant to 28 U.S.C. § 1447(c) the Court hereby remands this case to the Second Judicial District Court for the State of New Mexico. A separate Order of Remand will follow.

Given the clarity of the law on point and the lack of legal basis for alleging fraudulent joinder, the Court, pursuant to its authority in 28 U.S.C. § 1447(c), grants Plaintiff's motion for reasonable costs and expenses, including attorney's fees, incurred because of the removal. This Court will, therefore, retain jurisdiction of the fee issue while otherwise remanding the case.

Plaintiffs shall have **14 days** from entry of this Order to submit their cost and fee affidavit. Defendants will have **14 days** to challenge any of the claimed costs and fees.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE